UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOREN LEON, | |
| Plaintiff, | |
| v. | 23 Civ. 5182 (DEH) |
| MARY KEARNEY, et al., | **OPINION AND ORDER** |
| Defendants. | |

DALE E. HO, United States District Judge:

This is an action brought by Loren Leon against Mary Kearney, Melissa Hines, Joni Hughes, Landing Living LLC, and Related Rentals Corporate (collectively "Defendants").[1] Plaintiff alleges claims under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"), the Fourth Amendment, and state law.[2] Before the Court is Defendants' Joint Motion to Dismiss.[3] For the reasons set forth below, Defendants' motion to dismiss is **GRANTED.**

## BACKGROUND

The following facts are derived from the Complaint and assumed to be true for purposes of resolving Defendants' motion.[4] Because Plaintiff proceeds *pro se*, her submissions are construed liberally and interpreted to raise the strongest arguments that they suggest.[5]

---

[1] *See* Compl., ECF No. 1.

[2] *Id.*

[3] ECF No. 23.

[4] *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

[5] *See Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 457 (2d Cir. 2022).

Plaintiff is a "young black female."[6]  On February 20, 2023, she entered into a lease agreement with Landing Living to rent an apartment unit, Apt. 10T located at 400 Chambers Street in Manhattan (respectively the "Unit" and "Building").[7]  Defendants accused Plaintiff of subletting her apartment on June 9, 2023,[8] and Plaintiff requested proof in response.[9]  Defendant Hines emailed in response, explaining that "some renters in Plaintiff's unit were trying to gain access to the [building's] amenities through the property manager" on June 8, 2023, and when they were asked for their IDs, the property manager discovered that they were not residents of the building.[10]  Plaintiff explained that "someone had asked her about the amenities in the building" the day before, and she "told them she was in Apt. 10T if they needed anything."[11]

Two days later, on June 11, 2023, the building's doorman entered Plaintiff's apartment without her consent to disrupt a cleaning service the Plaintiff had arranged.[12]  While Plaintiff escorted the housekeeping staff to her apartment, she was asked to show proof of her lease.[13]  Plaintiff then saw a note attached to the doorman's front desk, "with her ID picture, zoomed in and printed out," with a note reading, "Loren Leon, rented 10T, subletting it."[14]

---

[6] Compl. ¶ 18.

[7] *Id.* ¶¶ 1, 34.

[8] *Id.* ¶ 10.

[9] *Id.* ¶ 12.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 14.

[12] *Id.* ¶¶ 15-16.

[13] *Id.* ¶¶ 26-28.

[14] *Id.* ¶ 30.

Plaintiff filed the Complaint on June 20, 2023.[15]  Defendants Melissa Hines and Landing Living LLC filed an Answer and Counterclaim for Breach of Contract and Declaratory Judgment on July 14, 2023.[16]  On August 6, 2023, the remaining Defendant, Related Rentals Corporate, filed an Answer.[17]  All Defendants filed a Joint Motion to Dismiss on October 6, 2023.[18]

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19]  The Court accepts "all [non-conclusory] factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor."[20]  "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."[21]  However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[22]

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.[23]  A complaint need not make "detailed factual allegations," but it must contain more than "a

---

[15] ECF No. 1.

[16] ECF No. 9.

[17] ECF No. 16.

[18] ECF No. 23.

[19] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[20] *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).

[21] *Sacerdote*, 9 F.4th at 106-07.

[22] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[23] *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

formulaic recitation of the elements of a cause of action."[24]  While all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."[25]

The Court is obliged to construe liberally *pro se* pleadings[26] and to interpret them to raise the "strongest [claims] that they *suggest.*"[27]  Even so, the Court must dismiss a complaint that does not plead sufficient facts "to state a claim to relief that is plausible on its face."[28]  To state a claim, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully"[29] and cannot rely on mere "labels and conclusions" to support a claim.[30]  In other words, "the Court's duty to liberally construe a [*pro se*] plaintiff's complaint is not the equivalent of a duty to re-write it."[31]  If a *pro se* plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint.[32]

## DISCUSSION

Plaintiff brings claims under the Fair Housing Act, the Fourth Amendment, and various state law provisions.  The Court considers each in turn below.

### 1.  Fair Housing Act Claims

The FHA forbids discrimination "against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection

---

[24] *Iqbal*, 556 U.S. at 678.

[25] *Id.*

[26] *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[27] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

[28] *Twombly*, 550 U.S. at 570.

[29] *Iqbal*, 556 U.S. at 678.

[30] *Twombly*, 550 U.S. at 555.

[31] *Thomas v. N.Y. City Dep't of Educ.*, No. 15 Civ. 8934, 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016).

[32] *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

therewith, because of race, color[.]"[33]  As relevant here, the FHA prohibits both intentional

discrimination and discrimination in the form of a hostile housing environment.  The Court

considers Plaintiff's FHA claim under both theories below.

### *Intentional Discrimination.*

"There is . . . no question that a landlord may be liable under the FHA for intentionally

discriminating against a tenant based on race."[34]  Plaintiff does not allege direct evidence of

discriminatory intent, such as "remarks made by decisionmakers that could be viewed as

reflecting [such] animus."[35]  "When, as here, a plaintiff brings a claim under the FHA that does

not rest on direct evidence of landlord discrimination, we analyze the claim under the familiar

*McDonnell Douglas* burden-shifting framework first developed in Title VII cases."[36]  Under the

"reduced pleading burdens" subject to that framework, "[a] plaintiff must plausibly allege that

she '(1) is a member of a protected class, (2) suffered an adverse action, and (3) has at least

minimal support for the proposition that the housing provider was motivated by discriminatory

intent.'"[37]

Even liberally construing the allegations in her complaint, Plaintiff has failed to plead

sufficient facts even to minimally support the proposition that Defendants were motivated by

---

[33] 42 U.S.C.A. § 3604(b).

[34] *Francis v. Kings Park Manor, Inc*., 992 F.3d 67, 71 (2d Cir. 2021); *see also* 42 U.S.C. § 3604(b).

[35] *Henny v. New York*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012).

[36] *Francis*, 992 F.3d at 73 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). The Second Circuit has "widely applied the *McDonnell Douglas* framework to the various antidiscrimination laws."  *Francis*, 992 F.3d at 73 n.17.  "Courts, including the Second Circuit, have consistently relied on Title VII cases in their analysis of housing discrimination under the FHA."  *United States v. E. River Hous. Corp*., 90 F. Supp. 3d 118, 135 n.17 (S.D.N.Y. 2015).

[37] *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19 Civ. 2771, 2021 WL 5121137, at *2 (2d Cir. Nov. 4, 2021).

discriminatory intent.  The Complaint alleges that Defendant Melissa Hines accused Plaintiff of "subletting her apartment solely based on her race" and "was unfairly singled out and targeted due to her racial background."[38]  But these are merely conclusions, not *facts* that could support an inference of discriminatory intent.  On a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."[39]

    For example, a "plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated [tenant] outside [her] protected group *and* sufficient facts from which it may reasonably be inferred that the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance."[40]  In other words, a plaintiff who lacks direct evidence of discriminatory intent can still successfully plead a claim by providing facts about other tenants who did not receive the same treatment as the plaintiff, but who are in a "situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."[41]  For instance, in a different case in this District, the plaintiff, a Black man bringing an employment discrimination claim based on being subjected to various disciplinary actions by his employer, alleged sufficient facts to support an inference of discriminatory intent by describing coworkers who were not Black, but who engaged in policy infractions "comparable to those for which plaintiff was disciplined," but were not similarly disciplined themselves.[42]  Here, however, Plaintiff does not make analogous

---

[38] Compl. ¶ 69.

[39] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also A.L.M. ex rel. Moore*, 2021 WL 5121137, at *2 ("conclusory assertions . . . cannot give rise to a reasonable inference of discriminatory animus.").

[40] *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (emphasis added).

[41] *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001).

[42] *Baker v. MTA Bus Co.*, No. 18 Civ. 12231, 2023 WL 4896686, at *13 (S.D.N.Y. Aug. 1, 2023).

allegations about tenants who were not members of her protected classes and who were otherwise comparable to her, but were treated differently than she was. Her conclusory allegation that her treatment was "discriminatory" is insufficient to state a discrimination claim under the FHA.[43]

### *Hostile Housing Environment.*

The Second Circuit has also held that the FHA protects residents against conduct that "would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling."[44] "Courts in this Circuit have construed [§] 3604(b) of the FHA to prohibit . . . a hostile environment" that is "comparable to" Title VII."[45] To set out a prima facie case that a landlord has created a hostile housing environment, a plaintiff must establish: "(1) that she was subjected to harassment sufficiently pervasive and severe so as to create a hostile housing environment, (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord."[46]

Plaintiff states that her hostile housing environment claim is predicated on: "racial profiling, false accusations, and discriminatory treatment."[47] Specifically, Plaintiff was accused of subletting, was required to escort cleaning staff to her apartment, and was asked for proof of

---

[43] *See Francis*, 992 F.3d at 73 (dismissing complaint alleging violations of FHA that lacked "even minimal support for the proposition that the [defendants] were motivated by discriminatory intent").

[44] *Francis v. Kings Parks Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019), *vacated in part on other grounds*, 992 F.3d 67 (2d Cir. 2021).

[45] *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019).

[46] *A.L.M. ex rel. Moore*, 2021 WL 5121137, at *1.

[47] Pl.'s Opp'n ¶ 47, ECF No. 25.

her lease; and a copy of her ID was placed at the doorman's desk noting that she was purportedly subletting her apartment.[48]  Plaintiff's claim fails for two reasons.

First, Plaintiff fails to establish the first factor, that the conduct alleged was so pervasive and severe as to rise to the level of an actionable hostile housing environment.  A plaintiff bringing such a claim "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her [housing] environment."[49]  A valid claim has both an objective and a subjective dimension: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the [housing] environment to be abusive."[50]  In assessing the first prong, a court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance.'"[51]

Here, Plaintiff emphasizes that Defendants' alleged conduct "should be evaluated in terms of their impact on the plaintiff's daily life and well-being."[52]  But even crediting Plaintiff's allegations as to the effect of Defendants' conduct on her life, that conduct—accusing Plaintiff of subletting, requiring her to escort cleaning staff to her apartment, and asking for proof of her lease and a copy of her ID card—does not amount to a situation that a reasonable person would

---

[48] *See* Compl. ¶¶ 10, 15, 26-28.

[49] *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019).

[50] *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (Title VII claim hostile work environment claim).

[51] *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[52] Pl.'s Opp'n ¶ 47.

consider so severe and pervasive so as to have altered the conditions of her housing environment, as courts in this District have held when considering similar allegations.[53]

Second, even assuming for the sake of argument that Defendants' alleged conduct was "sufficiently pervasive or severe" as to satisfy the first prong of a hostile housing environment claim, Plaintiff "fails to adduce evidence sufficient to establish that the harassment occurred *because* of her membership in a protected class."[54]  In other words, Plaintiff has not pled facts to show that the treatment she endured was *because* of her race.  Rather, Plaintiff makes conclusive assumptions linking the Defendant's actions and her race, without alleging facts that would allow one to infer causal link between the two, which is what the law requires.

In response to Defendants' argument that "plaintiff's allegations are conclusory," Plaintiff asserts that "she was falsely accused of subletting her unit based solely on her race, which constitutes racial profiling"[55] that she was "unjustly accused . . . of subletting her apartment, an accusation solely rooted in the Plaintiff's race,"[56] and that "she was unfairly singled out and subjected to unwarranted scrutiny due to her racial identity."[57]  But again, these are conclusions, not facts suggesting a causal link between her alleged treatment and her race.

---

[53] *See A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 17 Civ. 7385, 2019 WL 3532178, at *7 n.6, *9 (S.D.N.Y. Aug. 2, 2019), *aff'd*, No. 19 Civ. 2771, 2021 WL 5121137 (2d Cir. Nov. 4, 2021) (granting motion for summary judgment where the plaintiff alleged defendants harassed them by blocking their family from entering the unit or using common areas and damaging the plaintiff's delivery packages, car, and other personal property). *See also Dickerson v. BPP PCV Owners LLC*, No. 21 Civ. 3, 2024 WL 1348497, at *2, *3 (S.D.N.Y. Mar. 28, 2024) (granting motion to dismiss where Plaintiff endured a false accusation, a "heated verbal confrontation," "the summoning of the police," and was asked if she was a "housemaid" because the Court reasoned these events "severe or pervasive enough to constitute a hostile environment.").

[54] *A.L.M. ex rel. Moore*, 2021 WL 5121137, at *2 (emphasis added).

[55] Pl.'s Opp'n ¶ 50.

[56] *Id.* ¶¶ 25-26.

[57] *Id.* ¶ 26.

Without additional factual allegations tending to show, even circumstantially, that Defendants were motivated by racial animus, such as allegations that "[s]he was treated less favorably than similarly situated [tenants] of other races,"[58] Plaintiff's conclusory assertions fail to state a claim.

Even under the "less stringent standard" accorded to *pro se* pleadings, Plaintiff's complaint fails to sufficiently allege discrimination in violation of FHA. The Court accordingly dismisses the FHA claims against Defendants.

### 2.  Fourth Amendment Claims

Plaintiff's Complaint also indicates that she seeks to bring claims against Defendants under 42 U.S.C. § 1983 ("§ 1983") for violating her Fourth Amendment rights. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."[59] A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage,"[60] and private parties generally are not liable under the statute.[61]

Here, Plaintiff alleges a "violation of her Fourth Amendment rights stems from the Defendant[s'] actions, which, in essence, can be likened to an unreasonable search and seizure of her personal space and privacy."[62] Defendants, however, are not state actors. "For the conduct

---

[58] *Cf. Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014); *accord McGuinness* v. *Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is a common and especially effective method of establishing a *prima facie* case of discrimination."

[59] *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005).

[60] 42 U.S.C. § 1983.

[61] *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013); *accord Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

[62] Pl.'s Opp'n ¶ 28.

of a private entity to be fairly attributable to the state, there must be such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself."[63]  Here, Plaintiff does allege that Defendants acted under the color of a state "statute, ordinance, regulation, custom or usage."[64]  Accordingly, the Court dismisses the Fourth Amendment claim against Defendants.

### 3.  State Law Claims

Plaintiff's claims under federal law have been dismissed, leaving only her state law claims.[65]  The Court declines to exercise supplemental jurisdiction over these claims.[66]  The Supreme Court and the Second Circuit have made clear that, generally, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"[67]  "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."[68]

Here, there is no reason to depart from that general rule.  Given the early stage of the case, and the fact that no discovery has begun, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity," do not

---

[63] *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003).

[64] *See* Pl.'s Opp'n generally.

[65] Defendants Melissa Hines and Landing Living LLC filed counterclaims for breach of contract and declaratory judgment.  *See* ECF No. 9.  The Court declines to exercise supplemental jurisdiction over the counterclaims for substantively the same reasons discussed in §3, "State Law Claims".  The counterclaims arise under state law and there would not be diversity jurisdiction.

[66] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").

[67] *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

[68] *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006).

counsel in favor of exercising jurisdiction over the state law claims.[69]  Because New York state

courts are better suited to adjudicate Plaintiff's remaining claims, declining to exercise

jurisdiction is in the interest of judicial economy and comity with state courts.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is

**GRANTED.**

The Clerk of Court is directed to terminate ECF No. 23 and to mail a copy of this Order

to *pro se* Plaintiff.

SO ORDERED.

Dated: August 7, 2024
      New York, New York

DALE E. HO
United States District Judge

---

[69] *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (cleaned up).